**FIRST DIVISION
BARNES, P. J.,
DOYLE, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**May 24, 2023**

# In the Court of Appeals of Georgia

A23A0008. IN THE INTEREST OF B. L., et al., CHILDREN (FATHER).

DOYLE, Presiding Judge.

Richard Liberty, the father of B. L. and E. L., appeals from the trial court's order awarding primary physical custody to the children's mother, contending that the trial court erred by (1) failing to give his testimony the presumption of truth, (2) excluding prior consistent statements he made, (3) refusing to award him custody, and (4) awarding custody to the children's mother because there was no substantial change in circumstances to justify such an award. For the reasons that follow, we affirm the trial court's ruling.

"When considering a ruling on a material change in circumstances, this Court views the evidence in the record in the light most favorable to the trial court's order

and will affirm the trial court's decision if there is any evidence to support it."[1] So viewed, the record shows that the parties, who were never married, are the parents of twin boys B. L. and E. L., who were born in 2015. The parties' relationship has been acrimonious from the start, and each has alleged various forms of misconduct by the other. In 2020, the superior court entered a consent order on legitimation, custody, and child support, which, as relevant to this appeal, granted the father's petition for legitimation, awarded the parties joint custody with equal parenting time, and directed that neither party would pay child support to the other. In April 2021, the father filed a pro se motion for emergency hearing, alleging that E. L. had disclosed sexual abuse by the mother's live-in boyfriend and asking the court to suspend the mother's custody time until police completed their investigation of the abuse allegation. After a hearing, the superior court entered an emergency order temporarily modifying the parties' custody arrangement to give the father physical custody of the children at all times except on Saturdays from 8:00 a.m. to 8:00 p.m., when the mother would have parenting time.

---

[1] (Citation and punctuation omitted.) *Burnham v. Burnham*, 357 Ga. App. 580 (851 SE2d 202) (2020).

In June 2021, the father filed a motion for permanent full custody, alleging that the mother had neglected the children and had engaged in drug abuse, prostitution, and sexual misconduct. The mother filed a counterclaim seeking primary custody herself, alleging that since the consent order was entered in September 2020, there had been a change in circumstances — namely, the father had engaged in a pattern of harassment and domestic violence and had made allegations with no factual basis in an effort to gain primary custody of the children. In August 2021, the superior court entered another temporary order awarding the father primary physical custody, with the mother having visitation every other Saturday and Sunday. The court also transferred the case to the juvenile court, which appointed a guardian ad litem.

After an unsuccessful attempt at mediation, the case came before the juvenile court for a final hearing in May 2022. The father appeared pro se, and his attempts to testify that E. L. had been abused were met with repeated objections from the mother's attorney, which the juvenile court sustained. First, when the father testified that an administrator at the children's preschool told him E. L. had made a disclosure of sexual abuse, the mother's attorney objected on hearsay grounds and the court sustained the objection. The father then attempted to play a recording on his phone, presumably of E. L. disclosing abuse, and the court stated that he could play the

recording only if he could "verify" it. Next, the father testified that the reason the parties changed from split custody to him having full custody was that "there was a sexual assault on my child." The juvenile court again sustained the mother's objection, explaining, "you have to have either a doctor . . . that examined the kid and said this happened, or if you had a police record . . . or something of that nature, that's what I would need. You can't tell me somebody else told me this." The father responded that he had a letter from the child's counselor stating that E. L. had disclosed abuse, and the trial court advised that either the counselor or the child would need to testify for the letter to be admitted as evidence.

On cross-examination, the mother elicited the following testimony from the father: after E. L. made an outcry, the father contacted police and filed an emergency motion for custody ; during E. L.'s first forensic evaluation, the child did not disclose any abuse ; the father refused to accept the police department's conclusion that the allegations were unfounded, and he repeatedly asked police to conduct a second investigation ; and, at the father's insistence, officers eventually did conduct a second investigation. The father testified that he was never advised of the results of the second investigation, but the mother and guardian ad litem testified that officers again determined that the allegations of sexual abuse were unfounded and that, based on the

4

second investigation, officers were concerned the child had been coached. The mother also testified that she had ended her relationship with the alleged perpetrator and that no charges were ever brought against him.

The guardian ad litem reported that based on her investigation, both parties had engaged in "troubling" behavior and neither party had established that a change in custody was warranted. The father had asked for a change of custody because the mother was engaging in drug abuse, prostitution, and sexual misconduct, but he provided no evidence establishing that the mother was currently engaged in such behaviors. Similarly, the mother had asked for a change of custody based on the father's pattern of harassment and domestic violence, but the guardian ad litem found no current evidence in support of those claims. As to the allegations of sexual assault, the guardian ad litem noted that "because of the alleged coaching" by the father, it would be impossible to determine whether E. L. was actually abused.

At the conclusion of the hearing, the juvenile court expressly found that the father lacked credibility because the evidence showed that he had coached the children with respect to the allegations of sexual abuse and because he claimed not to know the results of the second police investigation even though it was completed at his insistence. In its final order, the juvenile court expressly found that the father

had coached the child regarding sexual abuse allegations in an attempt to gain primary custody of the children, refused to accept the findings of the police department's investigations, and acted in a manner that jeopardized the investigations. The court concluded that these actions constituted a material change in circumstances and that it was in the best interest of the children for the mother to be awarded primary physical custody. After the court entered its final order, the father filed this appeal.

1. The father contends that the trial court erred by failing to give his testimony the presumption of truth. He focuses on the court's statement at the end of the hearing, "They're going to go with [the mother]. That's what happens when you lie to the [c]ourt[,]" and argues that there was no evidence to support the trial court's conclusion that he had lied to the court. His argument is unavailing.

It is axiomatic that issues of witness credibility are for the trial court to resolve.[2] And in this case, the trial court explained precisely why it had concluded

_____

[2] See *Hooper v. Townsend*, 362 Ga. App. 532, 541 (12) (868 SE2d 286) (2022) (On appeal from an order modifying child custody, "[w]e are mindful that the Solomonic task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility.") (citation and punctuation omitted).

that the father was not credible, noting that there was evidence the father had coached the children regarding the allegations of sexual assault and that he denied knowing the result of the second investigation after insisting that it be completed. Because there was some evidence to support the court's finding, we will not disturb it on appeal.[3]

2. Next, the father contends that the trial court erred by limiting his attempts to present evidence relating to E. L.'s claims of sexual assault. In a related claim of error, the father contends that the trial court's erroneous evidentiary rulings led the court to wrongly conclude that he failed to establish that a change in custody was warranted. "The admission of evidence lies within the sound discretion of the trial court[,]"[4] and we discern no abuse of discretion in this case.

(a)    The father contends, first, that he should have been permitted to testify that E. L. made outcries of sexual abuse. He argues that because he testified on those issues at the emergency hearing, his testimony at the final hearing would be nonhearsay under the prior consistent statement exclusion.

---

[3] See id. at 542 (12).

[4] (Citation and punctuation omitted.) *Ahmed v. Clark*, 301 Ga. App. 426, 429 (688 SE2d 361) (2009).

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[5] Our rules of evidence provide that "[a]n out-of-court statement shall not be hearsay *if the declarant testifies at the trial or hearing*, is subject to cross-examination concerning the statement, and the statement is admissible as a prior inconsistent statement or a prior consistent statement under [OCGA §] 24-6-613[.]"[6]

Here, the father was attempting to introduce out-of-court statements made by other individuals as proof that the facts asserted in those statements were true — for example, the father attempted to introduce evidence that a preschool administrator told him E. L. made an outcry at school as proof that E. L. had been sexually abused. The declarants in this situation are the preschool administrator and E. L. — not the father — and neither the administrator nor E. L. testified at the final hearing. Consequently, this does not fall within the prior consistent statement exclusion to the hearsay rule.[7]

---

[5] OCGA § 24-8-801 (c).

[6] (Emphasis supplied.) OCGA § 24-8-801 (a) (1) (A).

[7] This evidence also would not be admissible under the Child Hearsay Statute because, by its terms, that provision only applies when the child "testifies at the trial, unless the adverse party forfeits or waives such child's testimony[.]" See OCGA § 24-

Moreover, to the extent the father may have sought to introduce statements for which he could be considered the declarant, they would not constitute prior consistent statements because that doctrine only applies to statements a witness made before his motive to fabricate came into existence.[8] The parties were engaged in an acrimonious custody dispute before the father testified at the emergency hearing — indeed, they were engaged in a custody battle before E. L. made an outcry of sexual abuse. Therefore, statements the father made at the emergency hearing do not fall within the prior consistent statement exclusion to the hearsay rule.

(b)     The father contends, second, that he should have been permitted to play a recording he took on his cellphone in which E. L. purportedly disclosed sexual abuse. The record reveals that at the final hearing, the father attempted to play "a recording on [his] phone from [his] child." The trial court told the father that he could introduce the recording only if he could "verify" it. The court's statement was consistent with Georgia law requiring a proponent to lay a proper foundation for any

---

8-820 (a).

[8] See *Cash v. State*, 294 Ga. App. 741, 744-745 (669 SE2d 731) (2008).

evidence he seeks to enter.[9] The father, however, made no further attempt to authenticate the recording. Crucially, he did not proffer any information as to the accuracy or completeness of the recording, and he does not contend that the minimal information he provided about the recording was sufficient to allow its admission. Under these circumstances, we discern no abuse of discretion in the trial court's ruling. Additionally, because the trial court did not abuse its discretion with respect to admission of evidence, we reject the father's contention that the court's erroneous evidentiary rulings led it to wrongly conclude that he failed to establish a material change in circumstances.[10]

3. Finally, the father contends that the trial court erred in concluding that the mother carried her burden of establishing that there was a material change in condition such that a change in custody was warranted.

> A petition to change child custody should be granted only if the trial
> court finds that there has been a material change of condition affecting

---

[9] See OCGA § 24-9-901 (a) (authentication is a condition precedent to the admission of evidence; proponent must establish that an item is what he claims it to be).

[10] See *Brazil v. Williams*, 359 Ga. App. 487, 490-491 (1) (b) (859 SE2d 490) (2021) (because there was evidence to support trial court's finding that there was no material change in circumstances, the court did not abuse its discretion in making that finding).

the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child. A determination that there has been a material change in condition supporting a modification of custody will be affirmed absent an abuse of discretion, and where there is any evidence to support the trial court's ruling, a reviewing court cannot say there was an abuse of discretion.[11]

The father argues primarily that the guardian ad litem investigated the allegations raised by both parties and concluded that while both parents had engaged in bad behavior, neither had provided evidence to substantiate the allegations they raised against the other. Thus, the guardian ad litem recommended that the parties return to the custody arrangements set forth in their October 2020 consent order. The trial court, however, was not required to follow the guardian ad litem's recommendation.[12] And under the facts of this case, including evidence that the father coached E. L. as to the allegations of sexual abuse, which led to the mother's parenting time being reduced while investigations were pending, we see no abuse of

---

[11] (Citations and punctuation omitted.) *Park-Poaps v. Poaps*, 351 Ga. App. 856, 861 (2) (833 SE2d 554) (2019).

[12] See *King v. King*, 284 Ga. 364, 365 (667 SE2d 30) (2008) ("[T]he recommendations of the guardian ad litem are not a substitute for the trial court's independent discretion and judgment.") (citation and punctuation omitted).

discretion in the trial court's conclusion that there was a material change in circumstances affecting the children's welfare. Further, the juvenile court did not abuse its discretion in concluding that an award of primary physical custody to the mother was in the best interest of the children.[13]

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

[13] See id. (where the mother's handling of sexual abuse allegations had a negative effect on the child's relationship with her father, the trial court did not err in concluding that an award of primary physical custody to the father was in the child's best interest).